DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, which granted permanent custody of Leo, D., Deandre E., and Desandra E. to the Lucas County Children Services ("LCCS"). For the reasons stated herein, this court affirms the judgment of the trial court.
The following facts are relevant to this appeal. Leo D. was born on July 30, 1988; Deandre E. was born on October 23, 1989; and Desandra E. was born on November 28, 1990. On June 7, 2000, LCCS filed a complaint in dependency and neglect, seeking permanent custody as well as a motion for a shelter care hearing of the children. Appellant, Rhonda F., mother[1] of Leo, D., Deandre E., and Desandra E., was incarcerated in Wisconsin when the complaint was filed. Appellant was on probation through Wisconsin when she was arrested on new criminal charges in Toledo and was then returned to Wisconsin to serve out her sentence. The children had been with their maternal grandmother from May 2000 to June 2000, but she was no longer able to care for them and neither she nor appellant identified any other possible relative placements for the children. The children had twice been in the custody of the state of Wisconsin Child Protective Services.
After the shelter care hearing on June 7, 2000, temporary custody was granted to LCCS. A guardian ad litem was appointed for the children. Counsel was appointed for appellant. A final disposition hearing was held on July 20, 2001. At the beginning of the hearing, the court determined that the appellant was incarcerated and serving prison sentences totaling thirteen years for several offenses. Appellant will be eligible for parole consideration on December 8, 2002, and has a mandatory release date of May 10, 2008. Her maximum discharge date is September 11, 2012.
The LCCS caseworker responsible since the filing of the complaint testified that no case plan had been begun as appellant was incarcerated and the fathers' whereabouts were unknown. She also testified that the foster family was interested in adopting all three children so that the children could remain together.
The GAL testified that initially in her communication with appellant, appellant wanted the children back. However, as it became apparent that appellant was not going to be immediately released, she "has pretty much given the children permission for them to be adopted" by the foster parents. The GAL recommended that LCCS be awarded permanent custody so that the children can be placed for adoption.
On August 13, 2001, the trial court entered a judgment entry awarding permanent custody of the children to LCCS, finding that the children could not be returned to their parents within a reasonable time. In this appeal, appellant sets forth three assignments of error:
"ASSIGNMENTS OF ERROR AND ISSUES PRESENTED
 "I. THE TRIAL COURT'S FINDING THAT PERMANENT CUSTODY IS APPROPRIATE IN THIS MATTER AND THAT LUCAS COUNTY CHILDREN SERVICES MADE REASONABLE EFFORTS TO PREVENT PERMANENT REMOVAL OF THE CHILD (SIC) ARE NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.
 "II. THE APPELLANT WAS DENIED HER RIGHT TO DUE PROCESS UNDER THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AS APPLIED TO THE STATES BY THE FOURTEENTH AMENDMENT THE OHIO STATE CONSTITUTION (SIC) WHEN THE COURT PROCEEDED TO HEARING WITHOUT HER PRESENT.
 "III. APPELLANT WAS DENIED HER RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL FAILED TO REQUEST A CONTINUANCE SO APPELLANT COULD APPEAR TO TESTIFY, OR IN THE ALTERNATIVE, TO DEPOSE APPELLANT PRIOR TO HEARING."
In her first assignment of error[2], appellant argues that the trial court's findings that permanent custody was appropriate and the LCCS made reasonable efforts to prevent permanent removal are not supported by clear and convincing evidence. This court finds no merit in this assignment of error.
R.C. 2151.414(E)[3] requires the trial court to find that the child cannot be placed with either of his or her parents within a reasonable time or should not be placed with the parents once the court has determined by clear and convincing evidence that one or more of the enumerated factors exist. Once the trial court finds from all relevant evidence that one of the enumerated factors exists, it then must consider whether permanent commitment is in the best interest of the child. R.C.2151.414(D).[4] Only then may it grant permanent custody of the child to the agency.
On appeal, this court must determine if the lower court complied with the statutory requirements of R.C. 2151.353 and 2151.414 and whether there was sufficient evidence to support a finding by clear and convincing evidence that one or more of the factors listed in R.C.2151.414(E) exist. Permanent custody may not be granted unless the trial court finds clear and convincing evidence that one or more of the enumerated factors in R.C. 2151.414(E) exist. In re Stacey S. (1999),136 Ohio App.3d 503, 520. Clear and convincing evidence is that level of proof which would cause the trier of fact to develop a firm belief or conviction as to the facts sought to be proven. Id. The trial court must consider the best interests of the child by examining the factors listed in R.C. 2151.414(D). An appellate court will not reverse a trial court's determination concerning parental rights and child custody unless the determination is not supported by sufficient evidence to meet the clear and convincing standard of proof. In re Adoption of Holcomb
(1985), 18 Ohio St.3d 361, 368 and In re Ball (1982), 5 Ohio App.3d 56,58.
This court has thoroughly reviewed the entire record in this case. Upon consideration of the law and of the entire record of the proceedings in the trial court, this court finds that there was clear and convincing evidence presented at the hearing to support the trial court's decision. The evidence clearly supports the trial court's award of permanent custody and the trial court's decision that permanent commitment was in the children's best interest.
Accordingly, appellant's first assignment of error is found not well-taken.
Appellant's second and third assignments of error are interrelated and will be considered together. In her second assignment of error, appellant argues that she was denied her right to due process when the trial court proceeded with the hearing without her. In her third assignment of error, appellant argues that she was denied her right to effective assistance of counsel when trial counsel failed to request a continuance or, in the alternative, to depose her prior to the hearing. This court finds no merit in either assignment of error.
In regard to the argument that an incarcerated parent's right to due process is denied when a trial court proceeds with a permanent custody hearing without her, in In re Robert F. (Aug. 20, 1997), Summit App. No. 18100, unreported, the Ninth Appellate District stated:
 "This Court has previously held that a trial court does not abuse its discretion when proceeding with a permanent custody hearing although the mother of the child is not present at the hearing because she is incarcerated. See In re Smith (Mar. 1, 1995), Summit App. No. 16778, unreported; In re Harding (Jan. 25, 1995), Summit App. No. 16552, unreported. In Smith, we acknowledged that a parent's right to raise her child is an `essential' and `basic' right. See Smith, supra, at 4; Harding, supra, at 6. However, in balancing all of the factors involved in determining compliance with procedural due process, an incarcerated parent's right to due process is not violated when she is represented by counsel at the hearing, a full record of the proceedings is made, and any testimony that she may wish to present could be presented by way of deposition. See id.; Harding, at 6-8. See, also, Mathews v. Eldridge (1975), 424 U.S. 319, 334, 47 L.Ed.2d 18, 23, 96 S.Ct. 893. Accord In re Yearian (Sept. 27, 1996), Portage App. Nos. 95-P-0102 95-P-0103, unreported; In re Vandale (June 29, 1993), Washington App. No. 92 CA 31, unreported. (LEXIS cites omitted.)"
Upon consideration of the above law and the record in this case, this court finds that appellant was not denied her right to due process when the trial court proceeded with the permanent custody hearing without her.
In regard to appellant's argument that she was denied her right to effective assistance of counsel when trial counsel failed to request a continuance or, in the alternative, to depose her prior to the hearing, in In the Matter of Talina S. (April 28, 1999), Lorain App. No. 98CA007051, unreported, the court stated:
 "Appellant, through his counsel, did not seek to present testimony to the court below by means of a deposition. Thus, Appellant's argument that the trial court abused its discretion by not considering additional or substitute procedural safeguards is inapposite.
 "This Court has maintained that `[a] continuance because of a party's absence is only a matter of right when it is likely that the party will be prejudiced due to his failure to present testimony[.]' In re Jones (Aug. 14, 1991), Summit App. No. 14964, unreported at 3-4, citing Guccione v. Hustler Magazine (1979), 64 Ohio Misc. 36, 38, 412 N.E.2d 952. Appellant argues that the presence of his counsel was insufficient to ensure his right to present testimony, since the `chief witness was Appellant.' However, Appellant's presentation of testimony via deposition, along with the presence of counsel, is sufficient to ensure his right to present testimony. Vandale, supra. Furthermore, it is unlikely that anything Appellant may have presented by way of testimony regarding the disposition of the case before the juvenile court would have mitigated against giving LCCS permanent custody of Talina. Talina had been in foster care for nearly two years at the time of the permanent custody hearing. Given the Appellant's long sentence yet to be served, the court was fully justified in finding by clear and convincing evidence that it was in Talina's best interest to grant permanent custody to LCCS and that Talina could not or should not be placed with either parent within a reasonable time."
The facts in the case sub judice are also such that "it is unlikely that anything Appellant may have presented by way of testimony regarding the disposition of the case before the juvenile court would have mitigated against giving LCCS permanent custody of" the children. Appellant is not, and will not, be able to care for the children in the foreseeable future and the children have already been in foster care since June 2000. Thus, appellant has not shown that she was prejudiced and denied her right to effective assistance of counsel when trial counsel failed to request a continuance or, in the alternative, to depose her prior to the hearing.
Accordingly, appellant's second and third assignments of error are found not well-taken.
On consideration whereof, the court finds that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the court costs of this appeal.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J., James R. Sherck, J., and Richard W. Knepper, J. concur.
[1] The alleged fathers were served by publication but failed to appear at the proceedings in the trial court. They did not participate in any services and are not parties to this appeal.
[2] Appellant also asserts in this assignment of error that LCCS failed to make reasonable efforts to locate the alleged fathers of the children. Appellant lacks standing to assert this argument.
An appeal is permitted only to correct errors which injuriously affect an appellant. Ohio Contract Carriers Assn., Inc. v. Pub. Util. Comm. (1942), 140 Ohio St. 160, syllabus; State ex rel. Gabriel v. Youngstown
(1996), 75 Ohio St.3d 618, 619. See, also, In re Johnson (Nov. 30, 1990), Lucas App. No.
L-90-011, unreported, (Resnick, M.L., J. concurrence) ("* * * the sole
purpose of an appeal is to correct errors injuriously affecting theappealing party. (Emphasis sic)") Therefore, an appellant generally does not have standing to argue issues affecting another person.
However, an appellant may "complain of errors committed against a non-appealing party when the error is prejudicial to the rights of the appellant." In re Smith (1991), 77 Ohio App.3d 1, 13. In In re Rackley
(Apr. 8, 1998), Summit App. No. 18614, unreported, the court stated "an appellant may not challenge an alleged error committed against a non-appealing party absent a showing that she herself has been prejudiced by the alleged error." See, also, State v. Ward (Sept. 21, 1988), Summit App. No. 13462, unreported; In re Matis (May 24, 1995), Summit App. No. 16961. In the case sub judice, appellant alleges that the trial court's award of permanent custody to LCCS was inappropriate because LCCS failed to make reasonable efforts to locate the alleged fathers of the children. However, appellant has made no showing that she was actually prejudiced by this alleged error. Absent such a showing, appellant lacks standing to raise this issue.
[3] R.C. 2151.414(E) provides:
 "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 "(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;
 "(3) The parent committed any abuse as described in section 2151.031 of the Revised Code against the child, caused the child to suffer any neglect as described in section 2151.03 of the Revised Code, or allowed the child to suffer any neglect as described in section 2151.03 of the Revised Code between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;
 "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 "(5) The parent is incarcerated for an offense committed against the child or a sibling of the child;
 "(6) The parent has been convicted of or pleaded guilty to an offense under division (A) or (C) of section 2919.22 or under section 2903.16, 2903.21, 2903.34, 2905.01, 2905.02, 2905.03, 2905.04, 2905.05, 2907.07, 2907.08, 2907.09, 2907.12, 2907.21, 2907.22, 2907.23, 2907.25, 2907.31, 2907.32, 2907.321, 2907.322, 2907.323, 2911.01, 2911.02, 2911.11, 2911.12, 2919.12, 2919.24, 2919.25, 2923.12, 2923.13, 2923.161, 2925.02, or 3716.11
of the Revised Code and the child or a sibling of the child was a victim of the offense or the parent has been convicted of or pleaded guilty to an offense under section 2903.04 of the Revised Code, a sibling of the child was the victim of the offense, and the parent who committed the offense poses an ongoing danger to the child or a sibling of the child.
 "(7) The parent has been convicted of or pleaded guilty to one of the following:
 "(a) An offense under section 2903.01, 2903.02, or 2903.03 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense was a sibling of the child or the victim was another child who lived in the parent's household at the time of the offense;
 "(b) An offense under section 2903.11, 2903.12, or 2903.13 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
 "(c) An offense under division (B)(2) of section 2919.22
of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense is the victim of the offense;
 "(d) An offense under section 2907.02, 2907.03, 2907.04, 2907.05, or 2907.06 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
 "(e) A conspiracy or attempt to commit, or complicity in committing, an offense described in division (E)(7)(a) or (d) of this section.
 "(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.
 "(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.
"(10) The parent has abandoned the child.
 "(11) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353
or 2151.415 of the Revised Code with respect to a sibling of the child.
 "(12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.
 "(13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.
 "(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
 "(15) The parent has committed abuse as described in section 2151.031 of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code, and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety.
"(16) Any other factor the court considers relevant."
[4] R.C. 2151.414(D) provides:
 "(D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
 "For the purposes of this division, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home."